```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION


UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
     v.                         )     No. 4:05 CR 605 HEA
                                )                     DDN
VIRGIL LEE JACKSON,             )
                                )
          Defendant.            )
```

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on March 7, 2006.

**1. Legal sufficiency of indictment**

Defendant Jackson has moved to dismiss the indictment as legally insufficient on its face (Doc. 26) and for a bill of particulars (Doc. 31).

The motion to dismiss the indictment as legally insufficient on its face is without merit. To be legally sufficient on its face, the indictment must contain all the essential elements of each offense charged, it must fairly inform the defendant of the charges against which he must defend, and it must allege sufficient information to allow the defendant to plead a conviction or an acquittal as a bar to a future prosecution. U.S. Const. amends. V and VI; Fed. R. Crim. P. 7(c); Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. White, 241 F.3d 1015, 1021 (8th Cir. 2001).

In this case, defendant is charged in one count with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). "To obtain a conviction under 18 U.S.C. § 922(g)(1) the government must 'prove beyond a reasonable doubt that (1) the defendant has previously been convicted of a crime that was punishable by a term of imprisonment exceeding one year, (2) the defendant knowingly possessed a firearm, and

(3) the firearm has been in or has affected interstate commerce.'" United States v. Urick, 431 F.3d 300, 303 (8th Cir. 2005) (quoting United States v. Moore, 212 F.3d 441, 445 (8th Cir. 2000)).

In this case, the indictment states that defendant had previously been convicted of Burglary-2nd Degree in St. Louis County and sentenced to 10 years imprisonment; he had been convicted of Forcibly Breaking into a U.S. Post Office to Commit Larceny, and sentenced to five years in prison; and he had been convicted of Robbery-1st Degree and sentenced to five years imprisonment. The indictment charges that defendant on October 24, 2005, knowingly possessed a specifically described Harrington Richardson Arms Company 5-shot revolver, which had previously been transported in interstate commerce. (Doc. 7.) The indictment is clearly legally sufficient on its face, as it contains all the elements of the crime, fairly informs defendant of the charges he must defend and contains sufficient information upon which he can plead a conviction or acquittal as a bar to future prosecution.

The motion for a bill of particulars is without merit. "A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite." United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir. 2002). It is not a discovery tool, and should not be used to obtain detailed disclosure of the government's evidence. United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993). The court has discretion to order the government to provide additional details when the indictment fails to sufficiently inform the defendant of the charges against him so as to hinder his ability to prepare a defense. United States v. Garrett, 797 F.2d 656, 665 (8th Cir. 1986).

As stated above, the indictment is sufficient to inform defendant of the charges against him. It fully sets forth the elements of 18 U.S.C. § 922(g)(1), and provides enough information to allow defendant to prepare his defense. Further, any information sought by defendant, even if not available in the indictment, is included in the affidavit

filed with the original complaint.  (Doc. 2.)  If information is available from other sources, a bill of particulars is not necessary. United States v. Stephenson, 924 F.2d 753, 761-62 (8th Cir. 1991) (government's "open file" policy and availability of information from other sources negated need for bill of particulars).

## 2. **Pretrial discovery**

Defendant Jackson has moved for disclosure of the identities of confidential informants (Doc. 28),[1] for disclosure of the government's intention to use Rule 404(b) evidence (Doc. 29), for production of the grand jury record (Doc. 32), and to take a deposition (Doc. 34).

In response to these motions, the government has established that it has disclosed to the defendant all investigative information it has in its file, with the exception of the grand jury record.

The motion to disclose the grand jury record is without merit, because defendant has not shown a particularized need for this discovery.  Federal Rule of Criminal Procedure 6(e)(2) and (3) provide that the grand jury proceedings are to remain secret, subject to certain exceptions.  Fed. R. Crim. P. 6(e); In re Grand Jury Investigation, 55 F.3d 350, 353-54 (8th Cir. 1995).  Disclosures of matters occurring before the grand jury are prohibited unless the defendant can show a "particularized need" for such disclosure.  United States v. Haire, 103 F.3d 697, 699 (8th Cir. 1996).

Defendant here has not shown a particularized need for such disclosures.  Instead, he offers to brief his particularized need after receiving the information he seeks.  In other words, defendant concedes he is unaware of whether or not he has any particularized need at this time to warrant disclosure of the information.  "These statements show no 'particularized need' for grand jury materials, rather they are but an expression of a generalized hope by [defendant] that he might find some defect in the grand jury proceedings. Such 'fishing expeditions'

---

[1]At the hearing on this motion the parties agreed that the issue of disclosure of any confidential informant is not an issue between the parties.  Therefore, this motion will be denied as moot.

do not provide sufficient grounds for disclosure prior to or at trial." Thomas v. United States, 597 F.2d 656, 658 (8th Cir. 1979).

The motion for leave to take a deposition will be denied. Defendant has moved this court to allow him to take the deposition of Gerald Cox and any confidential informants.

Defendant has not shown that the witnesses are ones he will call in his case, nor that there are exceptional circumstances that exist or that the witnesses' testimony will be lost before trial. Fed. R. Crim. P. 15(a); United States v. Adcock, 558 F.2d 397, 406 (8th Cir. 1977), cert. denied, 434 U.S. 921 (1977). "To establish exceptional circumstances, the moving party must show the witness's unavailability and the materiality of the witness's testimony." United States v. Liner, 435 F.3d 920, 924 (8th Cir. 2006). Defendant has made no showing that any of the witnesses he seeks to depose are going to be unavailable for trial; in fact, the government plans to call at trial the witnesses he seeks to depose. (Doc. 56 at 2.) Since defendant has shown no exceptional circumstances, his motion is denied.

### 3. Motion to suppress statements

Defendant Jackson has moved to suppress statements. In the Doc. 35 motion to suppress, defendant states that the information provided by the government indicates that defendant did not make any statement to law enforcement after he was arrested. (Doc. 35 at 1.) However, defendant argues that the government has provided recordings of telephone conversations between him and his wife, Gloria Jackson, between October 25 and 28, 2005. (Id. at 3.) Defendant argues that his statements to his wife during these conversations are privileged under federal law. See United States v. Lilley, 581 F.2d 182, 189 (8th Cir. 1978).

#### Government's memorandum proffer of facts

In its memorandum filed in opposition to the motion to suppress statements, counsel for the United States proffers the following information. On December 31, 2004, defendant threatened Gerald Cox with a firearm for telling state court judges that the surety portion of

defendant's bail bond business was a fraud.  In January 2005, a confidential informant ("CI Smith") told the federal Bureau of Alcohol, Tobacco, Firearms and Explosives that defendant had threatened to kill Gerald Cox because defendant believed that Cox told the Missouri Department of Insurance that the surety portion of defendant's bail bond business was fraudulent, which would cause defendant to lose his state bail bonding license.  In late July or early August, 2005, a second ATF confidential informant ("CI Davis") told the ATF that defendant had complained about Cox being the cause of his business problems and not being able to write bail bonds in St. Louis County and St. Charles County, except for a different bonding company.  (Doc. 60 at 1-3.)

The government's memorandum also states that on September 28, 2005, CI Davis made an "ATF-directed" recorded telephone call to defendant during which defendant made statements.  On October 19, 2005, CI Smith made an "AFT-directed" recorded telephone call to defendant during which defendant made statements.  On October 20, 2005, "CI-779045-1074" made an "ATF-directed" recorded telephone call to defendant to set up an in-person meeting at a restaurant.  On October 20, 2005, CI Smith met with defendant at the restaurant wearing an ATF digital recorder.  After lunch, defendant and CI Davis drove in Smith's vehicle during which defendant made statements.  On October 21, 2005, CI Smith made an "ATF-directed" telephone call to defendant during which conversation defendant made statements.  On October 22 and 23, 2005, CI Smith received telephone calls from defendant during which defendant made statements.  On October 24, 2005, CI Smith wore an ATF-digital recorder and transmitter when he met with defendant at the same restaurant as before and defendant's statements were recorded.  Later on October 24, CI Smith called defendant on defendant's cell phone and defendant called CI Smith on his cell phone.  Both calls were recorded.  ( Id. at 3-5.)

On October 24, 2005, following the calls, with the information provided by defendant to CI Smith, Smith finds a brown paper bag

containing a firearm and ammunition which he gives to ATF Special Agent Theodore Heitzler later that day.[2]  (Id.)

The government's memorandum also states that during November and December 2005, while incarcerated at the St. Francois County Jail, defendant made statements to fellow inmate Thomas Sunday who disclosed the statements to federal agents.  At that time, Sunday had not been acting as a government agent.  (Id. at 6.)  During December 2005 and January 2006, while incarcerated at the Jennings Jail, defendant spoke with fellow inmate Vincent Burke, who was not a government agent.  Burke disclosed these statements to federal agents.  ( Id.)

### Hearing record

From the statements of counsel and the evidence adduced at the hearing, the undersigned makes the following findings of fact:

### **FACTS**

1.  Around September 15, 2005, Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives Special Agent Theodore Heitzler received information about Virgil Lee Jackson from Amy Russell Cox. Agent Heitzler had known Ms. Cox since she was eight years of age and had been a friend of her family for many years.  Ms. Cox told Agent Heitzler in a telephone call that Jackson had threatened her father-in-law, Gerald Cox, regarding his business, Cox Bail Bonds.[3]  On September 15, 2005, Agent Heitzler interviewed both Ms. Cox and Gerald Cox.

---

[2] At the hearing held on March 7, 2006, counsel for defendant stated that defendant claimed no possessory or other interest in the firearm and ammunition, necessary to support a motion to suppress evidence, and therefore purposely did not file a motion to suppress that physical evidence.

[3] During this period of time, Gerald Cox had been in contact with the Federal Bureau of Investigation.  The FBI provided Agent Heitzler with reports regarding Cox.

2.   Also on September 15, Agent Heitzler interviewed professional bail bondsmen Randy Davis[4] and Aaron Smith.  Gerald Cox asked Davis to come to Cox's office so that Heitzler could interview him.  Davis stated that Jackson threatened Cox.

3.   On September 20, 2005, Agent Heitzler interviewed Aaron Smith.  Again, Gerald Cox asked Smith to come to Cox's office so he could be interviewed by Heitzler.  Again, Smith corroborated the information about Jackson threatening Cox.

4.   Davis and Smith cooperated with Heitzler by orally agreeing to record and to allow the monitoring of his conversations in telephone calls with Jackson.  No written consent document was used to establish Smith's or Davis's consent.

5.   A conversation between Davis and Jackson was recorded with Davis's agreement on September 28, 2005.  The recording on September 28 was made without the presence of Agent Heitzler.  On each occasion a conversation with Jackson was recorded, Davis orally stated his consent to Agent Heitzler.  On one occasion, Davis wore a recording device on his body.  However, only greetings between Davis and Jackson were recorded.[5]

6.   On October 19, 20, 21, 23, and 24, 2005, Smith recorded conversations between himself and Jackson.  The conversation on October 20 was recorded by a device worn by Smith on his body.  The recordings on October 23 were done on Smith's own, without specific direction by Agent Heitzler.  On October 24, Smith wore a monitoring and recording device on his person when he spoke in person with Jackson.[6]  On each of the other occasions, before a conversation with Jackson was recorded, Agent Heitzler asked Smith whether he continued to consent to the

---

[4]Davis and Smith had earlier been contacted by the FBI.  However, the FBI did not complete an investigation of the Cox-Jackson matter.

[5]At the hearing held on March 7, 2006, counsel for the United States indicated that the government would not offer this recording into evidence during its case-in-chief at trial.

[6]On this occasion, the recording device did not operate properly and none of the conversation was recorded.

monitoring and recording of his conversation with Jackson; each time Smith gave his consent.

    7.    On October 24, 2005, Agent Heitzler arrested Jackson.

## **DISCUSSION**

The statements made by defendant, set forth in the government's memorandum proffer and found by the court in its findings set forth above, should not be suppressed.

The statements made by defendant to Gerald Cox, Randy Davis, and Aaron Smith, were made by defendant when he was not in custody. The initial issue when determining whether to suppress statements of a defendant is whether they were voluntary and not coerced. "Voluntary statements of any kind, not made in response to police interrogation, are not barred by the Fifth Amendment and their admissibility is unaffected by Miranda and its progeny." United States v. Wood, 545 F.2d 1124, 1127 (8th Cir. 1976).

There is no indication here that the statements defendant made to Cox, Smith, and Davis were anything but voluntary. Defendant was not in custody. Therefore, warnings were not required under Miranda v. Arizona, 384 U.S. 436 (1966). He was not in the presence of law enforcement when he made the statements to Cox, Davis, and Smith, but instead spoke with them on the telephone or in public places. There is no evidence of coercion or overbearing of will. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986); United States v. Jordan, 150 F.3d 895, 898 (8th Cir. 1998), cert. denied, 526 U.S. 1010 (1999).

Further, defendant has no reasonable expectation of privacy in these conversations. He has no "constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police." United States v. White, 401 U.S. 745, 749 (1971); United States v. Corona-Chavez, 328 F.3d 974, 981 (8th Cir. 2003) ("well-established in Fourth Amendment jurisprudence that a person engaged in a conversation assumes the risk that another party to the conversation might choose to divulge or even record the conversation."). At his own risk, defendant chose to speak with Davis and Smith who

voluntarily recorded his conversations and provided them to law enforcement.

Further, the recording of the telephone conversations was not unlawful. "Title I of the Electronic Communications Privacy Act of 1986, . . . regulates the interception of wire, oral and electronic communications." Corona-Chavez, 328 F.3d at 978. Recording of telephone conversations is not unlawful, if consent to the recording is given prior to the interception by one member of the conversations. Id. Consent can be either express or implied; when a person voluntarily participates in a telephone conversation after knowing that it is being recorded, consent is implied. Id. If one party to the conversation consents, the Fourth Amendment rights of the other party, here, the defendant, are not violated. Id.

Here, both Davis and Smith knew that their conversations with defendant were to be recorded, and consented to the recording. Therefore, they expressly consented to the telephone interception. Lack of documentation of their consent does not change this conclusion; they knew the telephone conversations were being intercepted and participated in the telephone conversations, at the very least implying consent. Therefore, the recording of the telephone conversations was not unlawful.

Similarly, the conversations defendant had with prisoners Sunday and Burke should not be suppressed. While defendant was then in custody, he was not subjected to law enforcement interrogation. Rhode Island v. Innis, 446 U.S. 291, 301 (1980). No evidence indicated that his statements to his fellow prisoners were involuntary.

Whereupon,

**IT IS HEREBY ORDERED** that the motion of defendant for disclosure of the identities of confidential informants (Doc. 28) is denied as moot.

**IT IS FURTHER ORDERED** that the motion of defendant for disclosure of Rule 404(b) evidence is denied.

**IT IS FURTHER ORDERED** that the motion of defendant for leave to use additional peremptory challenges (Doc. 30) is deferred to the District Judge.

**IT IS FURTHER ORDERED** that the motion of defendant for a bill of particulars (Doc. 31) is denied.

**IT IS FURTHER ORDERED** that the motion of defendant for production of the grand jury record (Doc. 32) is denied.

**IT IS FURTHER ORDERED** that the motion of defendant to take a deposition (Doc. 34) is denied.

**IT IS FURTHER ORDERED** that the motion of defendant for leave to file additional and supplemental motions (Doc. 36) is sustained, in that defendant shall show in any such motion why such motion was not filed as previously required and shall show what prejudice would result from the failure of the court to allow the filing of such a motion.

**IT IS HEREBY RECOMMENDED** that the motion of defendant to dismiss the indictment (Doc. 26) be denied.

**IT IS FURTHER RECOMMENDED** that the motion of defendant to suppress statements (Doc. 35) be denied.

The parties are advised they have ten (10) days to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

### ORDER SETTING TRIAL DATE

At the direction of District Judge Henry E. Autrey, the jury trial of this action is set for **June 5, 2006, at 9:30 a.m.**

*/s/ David D. Noce*

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 12, 2006.